■ HARVEY L. GOLDSTEIN, as Trustee in Bankruptcy of RONALD J. PARR and Another, et al., Appellants, v LINCOLN SAVINGS BANK, Respondent.—Order, Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered December 17, 1987, which, *inter alia,* denied the motion of the plaintiffs to strike, upon the ground of collateral estoppel (CPLR 3211 [a] [5]), the general denials of the answer, and the second and third affirmative defenses, is unanimously modified, on the law and on the facts, to the extent of granting the motion to dismiss so much of the answer and the second affirmative defense as allege that defendant did not breach its permanent loan commitment to Parr Meadows Racing Association, Inc., and Messrs. Ronald J. and Alfred Parr, and, except as thus modified, otherwise affirmed, without costs.

In 1972, the Parr Company of Suffolk, Inc. (Parr Company), whose principal shareholders were Messrs. Ronald J. and Alfred Parr (Messrs. Parr), owned a vacant parcel of land (site) located in Yaphank, New York. The Parr company leased this site to the Suffolk Meadows Quarter Horse Racing Association, Inc. (Suffolk Meadows) for the purpose of constructing a racetrack. However, when Suffolk Meadows abandoned that project in 1973, as a result of a lack of funds, Messrs. Parr undertook to complete the construction. Thereafter, on June 1, 1976, the Lincoln Savings Bank (Lincoln) issued a mortgage commitment to Messrs. Parr, or their nominee, which was the Parr Meadows Racing Association, Inc. (Parr Meadows), for a $14 million permanent mortgage, if Messrs. Parr obtained a $14 million construction loan commitment by August 31, 1976, and, if the racetrack was completely operational by June 30, 1977. Messrs. Parr and Parr Meadows, in timely fashion, satisfied both of those conditions, as follows:

First, prior to August 31, 1976, Messrs. Parr and Parr Meadows, in which Messrs. Parr were the sole shareholders, obtained a $14 million construction loan from the Flushing Savings Bank (Flushing). At the construction loan closing, a mortgage buy-sell agreement was executed between Lincoln and Flushing, which provided that Flushing agreed to sell its construction loan to Lincoln, secured by a mortgage, and Lincoln agreed to pay $14 million for the loan and mortgage. In addition, Messrs. Parr agreed to convey the racetrack to Parr Meadows, and to guarantee the construction loan to Flushing.

Second, by June 30, 1977, the racetrack was completed, and the first races had been run.

Although Messrs. Parr and Parr Meadows had met Lincoln's conditions, Lincoln refused to purchase the construction loan and mortgage, or to issue a permanent mortgage commitment.

Since neither Parr Meadows nor the Messrs. Parr was able to pay off the construction loan, mentioned *supra,* nor obtain other permanent financing, they defaulted, and both Parr Meadows and the Messrs. Parr filed for bankruptcy. Mr. Harvey Goldstein (Mr. Goldstein) is the trustee in bankruptcy for Messrs. Parr, and Mr. James Barr (Mr. Barr) is the trustee in bankruptcy for the Parr Meadows (trustees).

Subsequently, Flushing, among others, commenced action in the Supreme Court, New York County, against Lincoln, and those actions alleged, *inter alia,* that Lincoln had breached its obligations concerning the financing of the construction of the racetrack. In the trial of those actions, the trustees did not participate. These actions were consolidated and tried in March 1983 without a jury. The trial court's decision contained over 100 findings of fact and 21 conclusions of law. In its fifth conclusion of law the trial court stated: "Lincoln breached its obligations under the Buy-Sell Agreement by refusing to purchase the construction notes and mortgages from Flushing on June 30, 1977, by failing to tender the purchase price of $14 Million to Flushing and by failing to extend the permanent loan to Parr Meadows on that date."

Following the decision, a judgment was entered November 17, 1983 in favor of Flushing against Lincoln in the amount of $14 million, plus interest. This court affirmed that judgment *(see, American Home Assur. Co. v Flushing Sav. Bank,* 104 AD2d 1059 [1st Dept 1984]) and, when the Court of Appeals denied leave to appeal (64 NY2d 606 [1985]), Lincoln paid that judgment in full.

After Flushing had prevailed in its action against Lincoln, trustees in bankruptcy (plaintiffs) Messrs. Goldstein and Barr commenced separate actions, which were subsequently consolidated into the instant action, against Lincoln to recover damages that the Messrs. Parr and Parr Meadows had suffered, as a result of Lincoln's alleged breach of its agreement to issue the permanent mortgage. In response, Lincoln filed an answer, which contained four affirmative defenses. Upon the ground that Lincoln's answer and its second and third affirmative defenses raised issues that had previously been decided

against Lincoln in the Flushing action, the plaintiff moved to dismiss them on the ground of collateral estoppel (CPLR 3211 [a] [5]). The IAS court denied that motion.

The Court of Appeals in *Kaufman v Lilly & Co.* (65 NY2d 449, 455 [1985]) states: "[t]he doctrine of collateral estoppel precludes a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point' *(Gilberg v Barbieri,* 53 NY2d 285, 291; *see, Schwartz v Public Administrator,* 24 NY2d 65, 69)".

Applying the doctrine of collateral estoppel as defined in *Kaufman v Lilly & Co. (supra)* to the record in this case, we find that the issue of whether Lincoln breached its obligation to issue a permanent mortgage commitment to Parr Meadow and the Messrs. Parr, which issue is raised by Lincoln's answer and second affirmative defense in the instant case, was decided against it in the Flushing action, discussed *supra,* since the trial court found, after trial, Lincoln breached its obligation by "failing to extend the permanent loan to Parr Meadows" on June 30, 1977. Since, in the Flushing action, Lincoln "had a full and fair opportunity to litigate that issue, it is axiomatic that collateral estoppel should apply" *(Trivizas v City of New York,* 137 AD2d 455, 456 [1st Dept 1988]). Therefore, based upon this analysis, *supra,* we find that the IAS court erred, since the doctrine of collateral estoppel is applicable herein.

Accordingly, we modify the IAS order to the extent of granting plaintiffs' motion to dismiss so much of the answer and the second affirmative defense as alleges that defendant did not breach its permanent loan commitment to Parr Meadows and the Messrs. Parr.

We have considered the other points raised on appeal, and find them to be without merit. Concur—Kupferman, J. P., Sullivan, Ross, Asch and Wallach, JJ.